[Civ. No. 877. First Appellate District.—August 23, 1911.]

ELIZABETH TENCH, Respondent, v. ELIZA McMEEKAN, Appellant.

CONSTRUCTIVE TRUST—TRANSFER BY PARALYTIC TO SISTER FOR CARE—CONTROL TILL DEATH — BREACH OF TRUST — TRANSFER WITHOUT CONSIDERATION—PRIOR DEATH OF SISTER—ACTION BY SECOND GRANTEE OF PARALYTIC.—Where an aged paralytic had been cared for by his unmarried sister during the last illness of his wife, who continued to care for and keep house for him after her death, and the brother, at the suggestion of a third person, transferred his real estate and a bank deposit to his sister, under an agreement that the property was to be his and used for their joint benefit until he died, and was to be hers only if she survived him, whereas in fact he survived her, and the sister, in breach of trust, transferred the whole property to the one who instigated the transfer, without consideration, but still continued to care for her brother, and after she became ill employed a nurse for herself and her brother, who married the nurse, and after his sister's death conveyed the property to his second wife, it is held that she, as his grantee, is entitled to enforce a constructive trust against the grantee of the sister.

ID.—SUPPORT OF FINDING—AGREEMENT UPON TRANSFER WITHOUT INTENTION OF PERFORMANCE.—Where the complaint alleged that the transfer to the sister was procured without any intention of performing the alleged agreement, and that the brother relied on the

promises of the sister to hold the property subject to his control until his death, and that her promises and representations were made in bad faith, without intention of keeping the same, and the court found that the allegations of the complaint were true, it is held that the evidence tends to support such finding, and it cannot be disturbed upon appeal.

ID.—CONVEYANCE OBTAINED BY ACTUAL FRAUD — RIGHTS OF SECOND GRANTEE.—If the promises were made, as alleged, without any intention of performing them, and the conveyance was made in reliance thereon, it was obtained by actual fraud, and the second grantee of the paralytic would be entitled to a conveyance from the sister or from her grantee with notice and without consideration.

ID.—REVERSAL OF FINDING NOT JUSTIFIED.—It is not sufficient to reverse a finding of the court upon any fact that the appellate court would have come to a different conclusion. If the finding of the trial court finds support in the evidence, or by fair inference therefrom, it must stand.

ID.—INTENTION OF SISTER WHEN MAKING PROMISES.—While it must be conceded that a different conclusion might be drawn by the trial court as to the intention of the sister when making the promises, yet it is held that there is sufficient in the evidence to support the finding that the promises were made in bad faith, and without intention to perform the same.

ID.—PROPER ADMISSION OF PAROL EVIDENCE—DECLARATIONS OF SISTER WHILE HOLDING TITLE.—The court properly admitted parol evidence as to the admissions and declarations made by the sister while she held the title to the premises, that she held the title and the money in trust only while her brother lived, and that it would only become hers at his death.

ID.—PAROL EVIDENCE TO ESTABLISH A CONSTRUCTIVE TRUST OR FRAUD. Parol evidence is admissible to establish a constructive trust or fraud in procuring a conveyance.

ID.—DECLARATIONS OF DECEDENT AGAINST INTEREST.—The declarations of a decedent against interest in respect to real property held by the decedent are admissible in evidence against him.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. William H. Waste, Judge.

The facts are stated in the opinion of the court.

William H. H. Hart, and Aylett R. Cotton, for Appellant.

R. B. Tappan, for Respondent.

HALL, J.—This action was brought to obtain a decree that the defendant held certain described real estate in trust for plaintiff and for a conveyance thereof. Plaintiff recovered judgment as prayed for, and defendant moved for a new trial, which motion was denied. In due time defendant appealed from the judgment and order to the supreme court. The appeals were subsequently, by order of the supreme court, transferred to this court for determination.

Respondent claims the premises in suit under a conveyance from John Tench, now deceased, to herself, while appellant claims the said premises under a conveyance from Temperance Tench, now deceased, who in her lifetime had received a conveyance of the premises from said John Tench. For the better understanding of the case it is proper to make a general statement as to some undisputed facts in the case.

On the thirty-first day of May, 1906, John Tench, then aged seventy-three, was, and for some time prior thereto had been, sick and a paralytic to such an extent as to be almost helpless and unable to walk or to attend to his personal wants, and so continued up to the time of his death, which occurred on the eighteenth day of July, 1907. His wife, Mary Ann Tench, had deceased on May 22, 1906, leaving said Tench without any near relative except his sister, Temperance Tench, who during the last illness of his said wife had cared for both the wife and John Tench, and after the death of said Mary Ann, continued to care for and keep house for John Tench as before until May 31, 1906.

On May 31, 1906, John Tench, by a deed executed on said day, conveyed the premises in suit, of a conceded value of $3,500, to his sister, Temperance Tench, and at the same time transferred to her all the money he had on deposit in the savings and loan society, consisting of $1,150.29. This was all the property he owned save a little household furniture and personal effects of little value. Temperance Tench thereupon moved her own personal effects into the home of John Tench, which was the lower flat of the premises in suit, and continued to care for and keep house for him until the fifth day of October, 1906, when she was taken ill, and was no longer able personally to attend to her said brother, but did on the following day, to wit, October 6, 1906, employ

plaintiff, then Mrs. Hearn, a widow, to nurse and care for both herself and said John Tench.

From the deposit account transferred to her Temperance drew and used for the support of herself and said John Tench $250. On the sixteenth day of October, 1906, she transferred the entire balance of the money still on deposit to appellant, and at the same time conveyed to appellant the premises in suit.

Temperance Tench died October 29, 1906. Plaintiff, formerly Mrs. Hearn, married John Tench October 31, 1906, and thence continued to live with and care for him until his death, which occurred July 18, 1907. On May 27, 1907, John Tench by deed conveyed the premises in suit to plaintiff, his then wife.

It is alleged in the complaint that on May 31, 1906, said Temperance Tench promised and represented to her said brother John Tench that if he would convey to her the premises in suit she would care for and keep house for him as long as he should live, and would not record the deed thereto nor claim ownership therein until his death. It is also alleged that she also promised and represented to him that if he would transfer and assign said sum of $1,130.29 on deposit in said bank to her she would accept said money and use it for their joint support, and would not assert ownership to any portion of said sum of money until after his death.

It is further alleged, and not denied, that on May 31, 1906, John Tench, now deceased, reposed great trust and confidence in his said sister, Temperance Tench, and believed that she would deal fairly and justly with him.

It is further alleged that said John Tench relied on the said promises and representations of his said sister, and in reliance thereon conveyed the premises in suit, and transferred the money to her, and without other consideration, and that said representations and promises were made in bad faith and without any intention to perform them.

The court found the facts in accordance with the allegations of the complaint above set forth.

It is further alleged and found—and as we think upon abundant evidence—that the conveyance and assignment to appellant were without any consideration, and were taken

by her with knowledge of the trust and conditions upon which Temperance held the same.

Further allegations are made as to breach and nonperformance of the promises in reliance upon which the conveyance to Temperance by John Tench was made, and upon which findings were made in favor of respondent.

If, however, the promises were made as alleged, without any intention of performing them, and the conveyance was made in reliance thereon, the conveyance was obtained by actual fraud, and respondent, as the grantee of John Tench, would be entitled to a conveyance from Temperance Tench or her grantee with notice and without consideration. (*Brison* v. *Brison,* 75 Cal. 525, [7 Am. St. Rep. 189, 17 Pac. 689] ; *Nordholdt* v. *Nordholdt,* 87 Cal. 552, [22 Am. St. Rep. 268, 26 Pac. 599].)

Appellant, however, attacks the sufficiency of the evidence to support either the finding that Temperance made the representations and promises alleged, or that the conveyance to her was made by John Tench in reliance thereon, or that said Temperance made said promises without intention of performing them.

As to the making of the promises, and that the conveyance to Temperance was made in reliance thereon, we think the evidence is ample to support the findings upon these issues.

The very circumstances surrounding the transaction strongly suggest that the conveyance and assignment were both made for the purpose of securing to the old, sick and helpless grantor the care, support and attention that he would inevitably need for his remaining days. Up to the time of the death of Mary Ann Tench it is apparent that the care and services rendered by Temperance to her brother and his wife were but of a temporary nature. Upon the death of Mary Ann it became necessary that some more permanent arrangement should be made for the care of John Tench and his home. The suggestion that he make a conveyance of his home and a transfer of his bank account to Temperance came from appellant. She made the arrangements therefor and herself drew the deed. She enlisted the aid of John Baird to explain the transaction to the sick man. In effect, the evidence of this witness John Baird shows that appellant, in the presence of Temperance Tench,

requested him to procure the execution of the conveyance and assignment from John Tench to Temperance, and to explain to him that Temperance, for such conveyance and assignment, would take care of him as long as he lived, but that the deed would not take effect until after his death and would not be recorded until after his death.  Among other things this witness said: "Miss McMeekan said that the purpose of getting me there was to have the deed signed, and that Temperance Tench was willing to take care of her brother for the property, and that if it was signed into her name it would not be recorded; the deed would be held and would not become effective until after John Tench's death.  The money was to be used for their joint use, to be John Tench's just the same as though there had been no assignment made. Whatever was left of the money and property after John Tench's death, it would go to Temperance Tench." For this property he further said that Miss McMeekan said that "she" (Temperance) "was to take care of him, nurse him during his life. . . . "

According to his testimony he thereupon explained the matter to John Tench in substance as instructed by appellant.  The witness said: "I told him that this deed was to transfer his property over to his sister, and it would not take effect until after his death, that the property would be his just the same as long as he lived.  At his death the property and the money would go to his sister, what was left. During his life it would be his just the same as if there would be no transfer taken. . . . I said that his sister would take care of him."

In addition there is evidence of admissions made by Temperance Tench during her life and while she held the title to the premises, that she held it and the money in trust only while her brother lived, and that it would only become hers at his death.

From the evidence above quoted, as given by John Baird, and the conduct of both John and Temperance, it is a fair deduction that both understood that for the transfer of the money and the conveyance of the realty she was to care for John Tench as long as he lived, to use the money for their joint support, and to hold the home for him during his life and to claim no interest therein until after his death.  That

he made the conveyance and transfer in reliance on such promises there can be little doubt. Otherwise we must believe that in his old age, when helpless and incurably sick, of what would or might probably be a long illness, he made himself a pauper without claim upon anyone for care and support except by way of charity.

Appellant earnestly attacks the finding that the promises and representations of Temperance were made in bad faith and without intent to perform the same.

What a person's intent in such a matter may be is often a difficult thing to determine. It usually must be ascertained from his future conduct and speech, and the fact as to such intent is one peculiarly to be deduced by process of reasoning from the facts in evidence by the trial judge. It is not sufficient, to reverse his finding upon this or any other fact, for us to say that we would have come to a different conclusion. If the finding of the trial court finds support in the evidence or by fair inference therefrom, it must stand.

Appellant points to the fact that Temperance cared for John until she was taken sick, and then employed a nurse (this respondent) to take her place. This is true, but, on the other hand, the evidence shows without conflict that she also on the sixteenth day of October, 1906, made an absolute transfer and conveyance of all the money and property which had been conveyed to her by John, and to which alone he might look in the future for his support. There is no pretense in the record for any claim that when she assigned and conveyed to appellant she imposed any duty or obligation on appellant to support or care for John. Both in her pleadings and in her testimony appellant claims that the transfer and conveyance to her by Temperance, as well as the transfer and conveyance from John to Temperance, were absolute and without promise of any kind by her or Temperance.

It is true that appellant did not disturb John Tench in his occupancy of his home, and allowed the tenant of the upper flat to pay the rental thereof to him until his death, and furnished him a small sum of money before his death. But she distinctly claims to have done this out of no legal duty to do so, but because she had a right to do with her own as she pleased.

In addition to the undisputed evidence as to what Temperance did with the money and property before her death, there is evidence that she also at about the same time made efforts to have her brother sent to the county poorhouse. There is evidence that Temperance showed anxiety that her brother John might soon die, so that all the property might then become hers. In speaking of sending him to the county poorhouse, it is in evidence that she said that "she thought he would live about two weeks after he did get there. That would fix him."

The promises made by Temperance contemplated that she should give her personal attention to him as long as he should live, and that he should be supported out of the money and property transferred. By her sickness and death she was unable to carry out her promise for personal care, and by her deliberate act she at least attempted to deprive him of the right of his future support.

While it must be conceded that a different conclusion might have been drawn by the trial court as to the intention of Temperance when she made the promises, we think that there is sufficient in the evidence to support the finding made that the promises were made in bad faith and without intention to perform same.

Some claim is also made that the evidence shows that the deed to Temperance was made in consideration of some advances that it is claimed had been made by Temperance to John. From the whole record it is extremely doubtful whether or not any such advances had been made. If any were made, they were of a most trifling amount, but it is clear that the deed was not made in consideration thereof, or that they were taken into consideration in connection therewith at all.

Appellant also contends that the court erred in admitting parol evidence as to admissions and statements made by Temperance Tench concerning her title and interest in the property in dispute. The court did not err in so doing. Parol evidence is admissible to establish a constructive trust, or fraud in procuring a conveyance. (*Brison* v. *Brison,* 75 Cal. 525, [7 Am. St. Rep. 189, 17 Pac. 689].) And the declarations of a decedent against his interest, in respect to

his real property, are admissible in evidence. (Code Civ. Proc., sec. 1870, subd. 4.)

Appellant also urges that she was entitled to judgment on the pleadings and findings, because it appears therefrom that John Tench conveyed the premises in suit to Temperance Tench. But the allegation and findings as to such conveyance must be read in connection with the other allegations and findings, which overcome the effect of such allegation, and show that respondent is entitled to a reconveyance of the title thus fraudulently acquired.

The findings support the judgment.

The judgment and order are affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 21, 1911.