[Civ. No. 2369. Third Appellate District.—November 29, 1921.]

JAMES J. CUMMINGS, Plaintiff and Respondent, v. FRANK M. CUMMINGS, Defendant and Appellant; W. J. HAMMONDS et al., Interveners and Respondents.

[1] QUIETING TITLE—CLAIM OF SOLE OWNERSHIP—PLEADING—RIGHT OF INTERVENTION.—Where in an action to quiet title to real property the plaintiff alleged in his complaint that he was the owner of all the property, such fact did not preclude persons who were not made parties defendant to such complaint from intervening and setting forth their claims, although in his answer to the cross-complaint he alleged that he and such interveners were owners in common.

[2] ID.—PLEADING—EVIDENCE—ADJUDICATION OF ENTIRE OWNERSHIP—DUTY OF COURT.—Where in an action to quiet title to real property the whole issue as to the ownership of the property is before the court upon pleadings properly framed, it is the duty of the court to adjudicate the whole question of ownership according

to the evidence and award to each of the litigants such interest as the proofs show he has in the property.

[3] Constructive Trust — Fiduciary Relation — Oral Promise to Reconvey Real Property.—A conveyance of real property by one brother to another upon an oral promise to reconvey when requested is founded upon a fiduciary relation and is therefore a constructive trust under subdivision 3 of section 852 of the Civil Code.

[4] Quieting Title—Existence of Fiduciary Relationship—Appeal —Presumption.—In an action to quiet title to real property conveyed by plaintiff to defendant upon an alleged oral promise to reconvey upon request, where there was a finding that a fiduciary relationship existed between plaintiff and defendant, it will be presumed on appeal taken on the judgment-roll alone that there was evidence received without objection, in addition to the fact that the parties were brothers, showing the existence of the relationship.

[5] Constructive Trust—Confidential Relationship—Scope of.— The confidential relationship existing between brothers upon a conveyance of real property by one to the other upon an oral promise to reconvey when requested extends to and inures to the benefit of others for whom the grantor holds interests in the property in trust and such persons are beneficiaries of the constructive trust created in favor of the grantor.

APPEAL from a judgment of the Superior Court of Stanislaus County. J. C. Needham, Judge. Affirmed.

The facts are stated in the opinion of the court.

Joseph Edward Connolly, Charles J. Heggerty and Knight & Heggerty for Appellant.

J. M. Walthall and F. O. Hoover for Interveners and Respondents.

HART, J.—The plaintiff brought this action to quiet his title as against the defendant Frank M. Cummings to 320 acres of land situated in Stanislaus County.

The appeal is by the defendant from the judgment, on the judgment-roll alone, and, therefore, the findings, so far as this record discloses (and, indeed, as must be presumed), contains a full and complete history of the controversy between the parties. From the findings, consequently, the facts herein presented will be extracted, although it is

deemed proper first to refer briefly to the several pleadings filed.

The complaint is in the usual form of a pleading designed to secure such relief.

The defendant answered, denying the material allegations of the complaint and also filed a cross-complaint, alleging, among other things, that the plaintiff, on the thirty-first day of May, 1911, executed and delivered to the defendant a grant, bargain and sale deed of conveyance whereby he sold and transferred to the said defendant the property described in the complaint, said deed having been duly recorded in the office of the county recorder of Stanislaus County on the third day of June, 1911.

The plaintiff replied to the cross-complaint, traversing its material averments and alleging in substance: That the property in dispute, at the time of the execution and delivery of the deed by plaintiff to the defendant, was owned in common by and in possession of the plaintiff, Thomas H. Wolfe and W. J. Hammonds; that upon the acquisition of the ownership of the property by plaintiff, Hammonds, and Wolfe from one H. C. Morris the title thereto was conveyed to plaintiff upon the agreement and understanding that he would, when requested by Hammonds and Wolfe, reconvey to them a two-thirds interest in the property; that plaintiff, reposing great faith and confidence in the defendant, his brother, and believing that he would faithfully execute the trust created in him and relying upon defendant's promises to reconvey said premises when requested so to do, made conveyance to defendant of the land in question upon the express understanding and agreement that the defendant would hold the same in trust for said Hammonds, Wolfe, and plaintiff in equal proportions and reconvey the same to them upon their request.

The prayer of the answer to the cross-complaint is that the plaintiff and interveners be declared the equal owners of the land in question and that defendant be required to convey the same to them.

Hammonds and Wolfe, having first obtained the consent of the court so to do, filed a joint complaint in intervention. We need not reproduce here the averments of said complaint in intervention, inasmuch as the facts found by the court are substantially in accord with the facts pleaded

in said complaint. The prayer of the complaint in intervention filed by Hammonds and Wolfe is for a decree adjudging that each of said interveners has and owns an undivided one-third interest in and to the said real property and that the said defendant be required to execute and deliver a deed conveying to the said interveners respectively their said undivided interests. The defendant answered the complaint in intervention, specifically denying each and all of the material averments thereof, and also set up as in bar of the action the provisions of sections 337 and 343 of the Code of Civil Procedure.

Annie E. Cummings, wife of the plaintiff, having first obtained permission from the court to intervene, filed a complaint in intervention, alleging that the property in controversy was acquired during the coverture of herself and the plaintiff; that it was community property; that it was transferred to the defendant by the plaintiff without any consideration; that she did not sign the instrument conveying said property to the defendant and had no knowledge of the purported conveyance by her husband to the defendant until the month of August, 1917.

To the complaint in intervention by Mrs. Cummings the defendant replied, denying the material allegations thereof and pleading laches as a bar to her right to the relief prayed for in her complaint in intervention.

The history of the controversy, as it is to be gleaned from the findings of fact, may be summarily given as follows: That some time prior to the tenth day of June, 1907, the plaintiff and the interveners, Hammonds and Wolfe, jointly entered into negotiations for the purchase of the real property described in the complaint. These negotiations culminated on the third day of August, 1907, by the purchase of said property by the plaintiff and the said interveners. Pending the negotiations for the purchase of the property, an agreement or understanding was had between the plaintiff and Wolfe and Hammonds that said Cummings and Wolfe were to pay for said land and that Hammonds was to conduct and complete said negotiations for the purchase thereof from H. C. Morris, who was then the owner thereof. It was further agreed that upon the purchase of the land, the plaintiff, Hammonds, and Wolfe should become the owners of the land in common, each to own an

undivided one-third interest therein, but that the land, for the sake of convenience, should stand in the name of James J. Cummings, who was to hold the same in trust, one-third belonging to the plaintiff, one-third to W. J. Hammonds, and one-third to Thomas H. Wolfe. This latter agreement was reduced to writing and signed by Hammonds, Wolfe, and plaintiff. It further appears that upon the purchase of said land by the parties just named, Hammonds took up his residence upon the land and continued in the possession thereof, although there had never been a conveyance by the plaintiff either to Hammonds or to Wolfe of the one-third interest to which each was entitled. For some reason, not explained by the findings, except that which is to be found in the general statement that it was "for convenience," the intervener, Wolfe, requested the plaintiff to transfer said property to someone to be held in trust for himself (plaintiff) and Hammonds and Wolfe and that thereupon the plaintiff selected his brother, the defendant, Frank M. Cummings, as the person to whom he would transfer the property in trust for the purposes stated. The plaintiff having revealed to Hammonds and Wolfe the fact that he had selected his (plaintiff's) brother as the person to whom the title to the land would be transferred in trust for the owners thereof, Hammonds and Wolfe consented thereto after the purposes of the trust had been fully explained to the defendant and upon the latter's promise that he would reconvey the property to the plaintiff and said interveners at any time that they would make a demand therefor. Accordingly, on the thirty-first day of May, 1911, the plaintiff executed a conveyance of the premises in question to the defendant, the instrument having been prepared by the intervener Wolfe, and said conveyance was on the third day of June, 1911, recorded in the office of the recorder of Stanislaus County.

The court found "that said conveyance was made to said defendant without consideration, in trust for said interveners, W. J. Hammonds and Thomas H. Wolfe, and that said defendant accepted said conveyance to be held by him in trust as aforesaid; that the plaintiff and defendant are brothers, and at the time of the conveyance of said property by the plaintiff to the defendant occupied the relation of great confidence to each other; that they had other dealings

in properties of a similar nature calling for and exhibiting great confidence between them, and that the plaintiff relied on these relations in conveying said property to the defendant in trust for the said interveners, W. J. Hammonds and Thomas H. Wolfe." It was further found that the defendant, Frank M. Cummings, "paid no taxes of any kind or nature levied or assessed against said property until after the institution of this action, and that said Frank M. Cummings never resided on said property and never received any rent, issues or profits therefrom, and never demanded or accepted, or received any accounting for rent or use of said property, and never claimed to either said W. J. Hammonds or Thomas H. Wolfe that he owned any interest in said property; that the said conveyance by the said plaintiff to the defendant, Frank M. Cummings, was made without any consideration, passing from said Frank M. Cummings to the interveners, W. J. Hammonds and Thomas H. Wolfe, or either of them, and that the said conveyance was made to said Frank M. Cummings in trust for the said interveners, W. J. Hammonds and Thomas H. Wolfe, as to their said two-thirds interest therein, and that said Frank M. Cummings never denied or repudiated said trust until after the first day of August, 1917; that it was intended by the plaintiff and defendant and the said interveners, Hammonds and Wolfe, that said deed should grant, and said deed did grant, to the said defendant, Frank M. Cummings an undivided two-thirds interest in said real property in trust for said interveners, W. J. Hammonds and Thomas H. Wolfe, to be reconveyed to said interveners, on demand, and an undivided one-third interest in said real property in fee to the said defendant, Frank M. Cummings.

As to the claim set forth by Mrs. Annie E. Cummings in her complaint in intervention, the court found that, while she did not sign or execute the conveyance of said property by James J. Cummings to Frank M. Cummings, she, nevertheless, had knowledge or the means of acquiring knowledge of said conveyance "and is now estopped from claiming any interest in said property."

It further appears that all taxes levied against the property down to the date of the filing of the complaint in this action were paid by the plaintiff James J. Cummings and the intervener Annie E. Cummings; that since the institu-

tion of this action the defendant has paid taxes assessed against the property for the year 1918 aggregating $270.80; that the plaintiff and interveners, Hammonds and Wolfe, have offered in court to repay the same with interest thereon at the rate of seven per cent per annum from the date of each payment to the date of trial, amounting in all to the sum of $283.32; that it was the understanding or the agreement that during the said trust the said Hammonds was to pay no taxes levied upon or assessed against said real property; that after the said conveyance by plaintiff to his brother the intervener, Annie E. Cummings, paid taxes assessed against said property amounting to the sum of $81.15.

The conclusions of law and the judgment harmonize with the findings.

The plaintiff and the intervener, Annie E. Cummings, have not appealed.

The appellant, in supporting his appeal, finds what he conceives to be not only fatal inconsistencies between the pleadings of his adversaries, but like inconsistencies between said pleadings and the findings. As to the pleadings, he emphasizes the fact that, while the complaint alleges that the plaintiff is the owner of *all* the real property therein described, both the answer of plaintiff to the cross-complaint of defendant and the complaint in intervention of Hammonds and Wolfe allege that plaintiff and interveners were the owners in common of said property. As to the proposition that the findings are not supported by the pleadings just referred to the appellant in his brief declares: "The findings declare both that defendant holds in trust one-third for plaintiff and two-thirds for Hammonds and Wolfe and that defendant holds in trust two-thirds for Hammonds and Wolfe and one-third in fee for defendant and also finds that the only agreement between plaintiff and Hammonds and Wolfe was that Hammonds would convey two-thirds to plaintiff and Wolfe and also that it was intended that the deed by plaintiff to defendant should grant and said deed did grant to defendant two-thirds in trust for Hammonds and Wolfe and one-third in fee for defendant." It is further contended by appellant that the trust alleged in the pleadings of the plaintiff and interveners, Hammonds and Wolfe, is not the trust found by

the court and "the judgment establishes a trust not alleged, and only one of the trusts found." This contention is founded on the theory that, since the plaintiff in his answer to the cross-complaint of defendant, and Hammonds and Wolfe, in their complaint in intervention, allege that defendant received and accepted the deed from plaintiff in trust for plaintiff and Hammonds and Wolfe, the court found that the defendant was the owner of an undivided one-third interest in the property and that as to the other undivided two-thirds interest therein he held the land in trust for Hammonds and Wolfe.

[1] The criticisms thus directed against both the pleadings of the adversaries of the defendant and the findings are devoid of legal force. It is obviously wholly immaterial that the plaintiff in his complaint which, as we have seen, was for the quieting of his title to the land in dispute, therein claimed that he was the owner of all the land in controversy, and this would be true even if he had *seriously* claimed by answer or otherwise throughout the progress of the pleadings subsequent to his complaint that he was the sole owner of all said land. That fact could not have the effect legally of precluding other persons, not made parties defendant to his complaint, from intervening and setting forth any claim or claims they might have to the property. (Code Civ. Proc., sec. 387.) But it is reasonably inferable from all the pleadings that the plaintiff, in instituting the action to quiet title to the land as against the defendant, was not only acting for himself, but also for his co-owners of the land, Hammonds and Wolfe. He might have assumed that, having been authorized as an agent of Hammonds and Wolfe to convey the property to some third party as a matter of convenience, and having in the exercise of the authority thus conferred upon him conveyed it to his brother, the defendant herein, he was still authorized to secure a reconveyance of the land from his brother to him through his action to quiet title not only for his own benefit but also for the benefit of Hammonds and Wolfe. But, be that as it may, it is true that the real issues which were finally submitted to the court for decision were made by the plaintiff's answer to the defendant's cross-complaint, the two complaints in intervention filed by Hammonds and Wolfe and Mrs. Cummings and the answers thereto by the

defendant and the real issues thus presented were whether
the land was owned in common by Wolfe, Hammonds, and
the plaintiff and conveyed to the defendant by the plain-
tiff in trust for the said three parties claiming such owner-
ship of the land, as alleged in the complaint in intervention
as well as in the answer of the plaintiff to the defendant's
cross-complaint. Nor are we able to discern a fatal incon-
sistency between the findings and the averments of the com-
plaint of the said interveners and the answer of the plain-
tiff to the defendant's cross-complaint. [2] It is true that
the court found that the one-third interest which was
claimed by the plaintiff was owned by the defendant, and
it is true that so far the findings do not correspond with
the pleadings of the said interveners and the plaintiff; but
the court did find, as we have seen, that Hammonds and
Wolfe were each the owner of a one-third interest in
said land and that defendant took the same in his name
with an agreement to reconvey it to them, and in so find-
ing it found that the trust as alleged arose at least in part.
There cannot be said to be any more of a variance between
the pleadings and the findings here than there would be if
A should sue B to recover upon a promissory note, the
face value of which was $1,000, and had alleged that no
part of the principal of said note or the interest had been
paid by the maker, and the proofs and findings showed
that, as a matter of fact, the maker had paid a considerable
sum upon the principal and interest, thus reducing the
judgment to an amount much less than that for which
the plaintiff had prayed and to which he would have been
entitled if the allegations of his complaint had been es-
tablished. The whole issue as to the ownership of the land
in dispute was before the court upon pleadings properly
framed, and it was within the power of the court—indeed,
its duty—to adjudicate the whole question of ownership
according as the evidence might in its judgment justify and
award to each of the litigants establishing his claim of part
ownership a judgment for such interest as the proofs showed
he had in the property.

[3] But the more serious question is as to the legal
nature of the transaction between these parties litigant.
Concededly, the conveyance of the property by the plaintiff
to the defendant upon the conditions stated involved an

express oral trust to convey, and as to this, in the absence of other conceivable equitable considerations which would operate to remove the transaction from the ban of the statute of frauds, it is obvious that the trust cannot be enforced (sec. 852, Civ. Code). That section provides, *inter alia*, that no trust in relation to real property is valid unless the same is created or declared by a written instrument, subscribed by the trustee, or by his agent thereto authorized by writing; or by the instrument under which the trustee claims the estate affected. But, further than this, since the alleged trust was created prior to the amendment of section 857 of the Civil Code by the legislature of 1913 (Stats. 1913, p. 438), it is void, because it was a trust for the conveyance of real property, which was not allowed under said section prior to the amendment referred to. (*Estate of Fair*, 132 Cal. 523 [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000].) Nor clearly is it strictly a resulting trust, which arises by operation of law and "where the legal estate is disposed of or acquired, not fraudulently or in the violation of any fiduciary duty, but the intent in theory of equity appears or is inferred or assumed from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go with the legal title." (1 Pomeroy's Equity Jurisprudence, p. 155. See, also, sec. 853, Civ. Code.) But, that the transaction resulting in the creation of the trust grew out of and was founded upon a fiduciary relation, and is, therefore, a constructive trust, arising by operation of law (Civ. Code, sec. 852, subd. 3), we think the findings, educed from presumptively sufficient evidence, clearly enough show.

[4] It is contended by the appellant, however, that, assuming that the findings sufficiently show that a fiduciary or confidential relation existed between the plaintiff and the defendant, still it is not alleged in any of the pleadings of the plaintiff and the interveners that any such a relation existed. It may be conceded that there appears to be some force in this contention. The answer of the plaintiff to the defendant's cross-complaint does not state facts clearly disclosing that a fiduciary or confidential relation existed prior to and at the time of the conveyance of the property to the defendant between the latter and the plaintiff. The complaint declares, as we have seen, that

"the plaintiff reposed great faith and confidence in the defendant, his brother, and believing that he would faithfully execute the trust created in him and relying on defendant's promise to reconvey said premises when requested so to do, plaintiff made conveyance to defendant upon the trust aforesaid.'' This might be said to be an attempt to aver a confidential relation between the plaintiff and the defendant, and doubtless such was the intention of the pleader in inserting that averment in the complaint. There was no demurrer to the answer of the plaintiff to the cross-complaint—indeed, there was none interposed to any of the pleadings filed in the case. We will not, however, nor is it necessary to do so, express an opinion herein upon the question whether the averments referred to, in the absence of a demurrer to that pleading of plaintiff, were sufficient to show a confidential relation between the plaintiff and the defendant; for, as we have before declared, we are of opinion that the findings do sufficiently show such a relation, and the presumption is, upon this appeal from the judgment upon the judgment-roll alone, that there was evidence received without objection, in addition to the fact that they are brothers, which is itself some evidence of such a relation, showing that prior to and at the time of the conveyance of the property by the plaintiff to the defendant a confidential or fiduciary relation existed between them, and that thus the defect in the plaintiff's pleading in that particular was cured at the trial (*Myers* v. *Canepa,* 37 Cal. App. 556 [174 Pac. 903, 906]).

[5] But it might be contended that, conceding that it is made to appear that such a relation existed between the plaintiff and the defendant, there is no showing of any such relation between the defendant and Hammonds and Wolfe. The answer to this contention, though, would be that the plaintiff, in investing the defendant with the trust, was, under express authority conferred by Hammonds and Wolfe, acting as the latter's agent, and that the very essence of the terms of the trust agreement was that the defendant would, upon demand made by the beneficiaries of the trust, reconvey the property, not alone to plaintiff, but also to Hammonds and Wolfe. In other words, the trust was vested in and accepted by the defendant upon the express promise upon his part that he would execute it according

to its terms, namely, that he would convey an undivided one-third interest in the land each to Hammonds and Wolfe and plaintiff. Thus it is clear that the confidential relation between the plaintiff and defendant extended and inured to the benefit of Hammonds and Wolfe. Indeed, inasmuch as the evidence, as we must presume, disclosed that the trust as described in the pleadings of the plaintiff and the interveners was created, and that the conveyance to the defendant of the *corpus* of the trust was without consideration, we think the case here comes clearly within the doctrine invoked in the case of *Kimball* v. *Tripp,* 136 Cal. 631 [69 Pac. 428].

In that case one Elizabeth L. Cook, being seriously ill and in great fear and peril of death and believing that she was about to die, conveyed to Tripp, the appellant in said case, certain of her real property, with oral instructions that, in the event of her death, he dispose of said property in certain designated ways and to certain designated individuals. The death of the grantor occurred shortly after the execution of the conveyance, and thereafter action was brought by one of the heirs of the deceased to set aside said conveyance and assignments of certain personal property and to have it declared that the defendant held the lands which were the subject of the conveyance and the personal property assigned in trust for the plaintiff and her co-heirs or for the estate of the deceased. The complaint in said action did not proceed upon the theory that fraud characterized the transaction culminating in the execution of the conveyance and the assignments by the deceased. It was contended in that case, as here, that since the trust was created orally the same could not be enforced, under the terms of section 852 of the Civil Code, *supra.* But the supreme court held with the plaintiff; and, as what is said therein has cogent application to the facts of this case, we quote from the opinion therein *in extenso* as follows:

"The position of the appellant on this point is, that as there was no fraud in the procurement of the conveyances, the plaintiff can have no relief. But, assuming the absence of fraud (though, in view of the defendant's relation to the grantor as her agent, this can hardly be assumed), it does not follow that equity cannot afford relief. The deeds, it is found, were made to the defendant simply as her agent,

and were therefore taken by him in trust for her; and though the trust was not expressed in writing, equity will not permit the defendant to convert the property to his own use, contrary to the intention of the parties and to the confidence reposed in him. 'The doctrine is both novel and startling which restricts, in matters of fraud, its jurisdiction over the operation of written instruments to those cases where the fraud has been committed in their creation. If maintained, it will sweep away its heretofore admitted jurisdiction in an infinite variety of cases, of almost daily occurrence, *where the fraud alleged consists in the use of instruments entered into upon a mutual confidence between the parties. Fraud in their use is as much a ground for the interposition of equity as fraud in their creation.* (Italics ours.) There is no distinction in the principle upon which the jurisdiction is asserted in the two cases. In both there is the same abuse of confidence, and from both the same injury results.' (*Pierce* v. *Robinson,* 13 Cal. 127.) In the case cited the instrument involved was a deed absolute in its terms, shown by parol evidence to have been intended as a mortgage. But the principle applies equally to other cases; as, for example, to the cases involved in *Hultz* v. *Wright,* 16 Serg. & R. 345 [16 Am. Dec. 575], and *Oliver* v. *Oliver,* 4 Rawle, 144 [26 Am. Dec. 123] (cited in the principal case), and in *Thompson* v. *White,* 1 Dall. 447 [1 Am. Dec. 252, 1 L. Ed. 206]. In the last—which is a very instructive case—the subject is fully discussed. Another example is that of the purchase of an outstanding title by a tenant in common, considered in *Mandeville* v. *Solomon,* 33 Cal. 43, where it is said: 'Where the circumstances of a transaction are such that the person who takes the title to property cannot be permitted to enjoy it, in whole or in part, without necessarily violating some principle of equity, a constructive trust will be raised for the party entitled in equity to its beneficial enjoyment,'—which is the same principle that, at law, governs the action for money had and received. This principle has not always been consistently applied by the courts; but in this state it has been held applicable to cases where there were fiduciary relations between the parties, as in this case (*Alaniz* v. *Casenave,* 91 Cal. 46 [27 Pac. 521]; *Brison* v. *Brison,* 75 Cal. 525 [7 Am. St. Rep. 189, 17 Pac. 689]; *Feeney* v. *Howard,* 79 Cal. 525 [12 Am. St. Rep. 162, 4 L. R. A. 826,

21 Pac. 984]) ; and the defendant comes directly within this restricted application of the doctrine. There is also another principle upon which the rule may be sustained, which is, that in such cases generally, *and in this case especially, there is an entire failure of consideration.* (Italics ours.) (Civ. Code, ·sec. 1689, subd. 2 et seq.; *Knight* v. *Tripp,* 121 Cal. 674, 681 [54 Pac. 267].)''

In *Oliver* v. *Oliver,* cited in the above case, it is said, referring generally to such transactions as are involved in this litigation: ''When the fairness of the transaction is impeached, it is immaterial whether the party intended a fraud, at the time of the contract, or whether the fraud consists in the fraudulent use of the instrument.'' Again, in the same case, referring to *Thompson* v. *White,* 1 Dall. 447 [1 Am. Dec. 252, 1 L. Ed. 206], the court said: ''The fraud consisted in Lawrence Salter obtaining conveyance of his wife's estate under a solemn promise to make a settlement which he afterward neglected to do. It has never been doubted that he entered into the contract in good faith. In his last sickness he expressed uneasiness at leaving no will, because, as had always been supposed, he thereby intended to comply with his promise. *The fraud consisted in the fraudulent use which was attempted to be made of the deed,* in the exclusion under the general rule of law, of Mary Thompson, the sister of Mr. Salter, and to whom Lawrence Salter promised to assure the property.'' (See, also, *Lyon* v. *Huntingdon Bank,* 14 Serg. & R. 283.)

As stated above, it is conceived that upon the principles enunciated by the foregoing authorities, the proposition submitted here may justly be solved and determined. In truth, the decree in the case, at bar is amply supported by findings disclosing a case which should receive the positive sanction of a court of equity. Indeed, if it were true that there was no principle in equity upon which the decree here could be sustained under the findings supporting it, a handle would thus be furnished for a most regrettable commentary upon that branch of our jurisprudence which, out of consideration for the impotency of the stubborn or inelastic rules of law so to extend their remedial power, has justly given wider range than otherwise it would have to the application of the salutary maxim that ''for every wrong· there is a remedy.''

Another point made by the defendant is that the action by the interveners was barred by the statute of limitations. We think that the point is clearly untenable. The trust found by the court to have been created was a continuing one and the statute in such a case would not begin to run until there was a repudiation of the trust. The action here was brought and Hammonds and Wolfe intervened therein within due legal time after the defendant had declared his repudiation of the trust.

The judgment is affirmed.

Burnett, J., and Finch, P. J., concurred.