[Civ. No. 2251.   Fourth Appellate District.—May 10, 1940.]

J. E. ROBERTSON, Respondent, v. ALYS LYON SUM-
MERIL, Appellant.

Joseph Anderson, Francis Gill and Howard E. Gawthrop
for Appellant.

Edward Brody and Harvey, Johnston & Baker for Respond-
ent.

MARKS, J.—Plaintiff brought this action to establish that defendant held title to certain property in Bakersfield, California, as trustee in trust for him, and to compel defendant to execute the trust by conveying the property to him. Judgment went for plaintiff and defendant has appealed.

Plaintiff and defendant are brother and sister. They were the son and daughter of Alice L. Robertson. Defendant, a widow with two children, lived with Mrs. Robertson until shortly before the death of the latter in March, 1933. Defendant and her children were supported by her mother for a number of years out of income principally furnished by plaintiff.

Mrs. Robertson was left a widow in 1922 or 1923. She received an income from the estate of her deceased husband until about 1926, by which time the administrator had misappropriated all the assets of the estate. Thereafter she was dependent on her children, principally plaintiff, for her support.

Plaintiff was operating manager for a motor freight line which kept him on the road constantly. He was on twenty-four hour service each day. He tried to make it a practice to send his mother a check for her living expenses on the first of each month but occasionally failed to do so until later in the month by reason of being called away. This caused Mrs. Robertson financial embarrassment.

The property here in question was owned by plaintiff and was leased to an oil company on a long term lease. The rental, $100 per month for the first five years, and $125 per month for the last five years of the term, was made payable on or about the first of each month. Plaintiff discussed with his mother the question of providing her with a regular monthly income so that she might not be embarrassed by his failure to send her his checks promptly. He offered to deed the Bakersfield property to her if she would agree to reconvey it to him if and when the administrator repaid the $15,000 which he had misappropriated, or, if that money was not repaid, to see that the property was reconveyed to him at the time of her death. Mrs. Robertson agreed to these terms and the Bakersfield property was conveyed to her. The administrator made no restitution and Mrs. Robertson received the rents until her death and retained title to the property until

March 3, 1933. She paid plaintiff nothing for the property. Defendant was fully informed of all these facts within a short time after December 30, 1931, the date of the deed conveying the property to Mrs. Robertson.

On March 3, 1933, Mrs. Robertson was seriously ill in a hospital. She died on March 21, 1933. On March 3d defendant took a deed to the hospital and had Mrs. Robertson execute it. This deed conveyed the Bakersfield property to defendant. It was recorded on March 11th and defendant received the rents from the property, at least until this action was instituted.

After defendant had possession of this deed she told plaintiff that Mrs. Robertson had deeded the property to her. Plaintiff then told defendant: "There is nothing I can do about it. The condition my mother is in is more important to me and we will talk about that later." Plaintiff paid his mother's doctor and hospital bills and funeral expenses.

Shortly after Mrs. Robertson's death plaintiff asked defendant to convey the Bakersfield property to him. Defendant replied that she hoped plaintiff would permit her to keep the property for a time so that she and her children would have some means of support; that she expected to receive $10,000 from a Mr. Comer and asked to keep the property until that sum was paid her. Her request was granted. She received the money from Mr. Comer in March, 1935, and plaintiff again asked her to convey the property to him. The record shows that defendant replied; "that she wanted to wait if I would let her until she could get a little more money, until she would actually make a reconveyance, and she said 'I feel it is right around the corner.' Q. And what did you say to that? A. I said if it will help you a little while longer, but please get busy and let us bring it to a close."

Between March, 1935, and May, 1937, plaintiff frequently asked defendant to reconvey the property to him. She found various excuses to postpone the actual conveyance but at no time asserted her ownership of the property and upon each request agreed to reconvey upon the happening of some future event. Several of these conversations were had in the presence of disinterested witnesses who detailed them during the trial. In May, 1937, defendant for the first time claimed the property as her own and refused to convey it to plaintiff. This action was commenced on June 23, 1937. No

written evidence of the trust was signed by either Mrs. Robertson, defendant or plaintiff.

■ Defendant urges two principal grounds for reversal of the judgment: That the trust is void because it was not evidenced by a writing (sec. 852, Civ. Code; *Barr* v. *O'Donnell,* 76 Cal. 469 [18 Pac. 429, 9 Am. St. Rep. 242]; *Tillaux* v. *Tillaux,* 115 Cal. 663 [47 Pac. 691]; *Smith* v. *Mason,* 122 Cal. 426 [55 Pac. 143]; *Sheehan* v. *Sullivan,* 126 Cal. 189 [58 Pac. 543]); and that plaintiff's cause of action is barred by the statute of limitations.

The cited authorities support the proposition that there can be no express trust created by a parol agreement. Those authorities are not controlling here because we are not concerned with an express but with a constructive trust. Such a trust is created by operation of law and may have its origin in parol and need not be supported by a writing. In a factually similar case the Supreme Court said:

"The subject of involuntary trusts, defined as a trust created by operation of law (sec. 2217), usually called constructive trusts, is again dealt with in section 2224 of the Civil Code. Its provisions show clearly that trusts by operation of law are left untouched by sections 847 and 857 and clauses one and two of section 852 (Civil Code). Section 2224 describes the involuntary trust comprehensively as follows: 'One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person *who would otherwise have had it.*' If the intention had been to prevent involuntary trusts where the violation of an express promise to convey constitutes the foundation, the fraud by which the thing is gained, the last clause should have been written: 'for the benefit of the person *from whom it was gained.*' As it stands, it means the person who would have had it, but for the fraud or other wrongful act whereby it was gained. In cases of involuntary trusts such as that here involved, the fraud consists of the betrayal of confidence by refusing to carry out the parol trust induced by that confidence. (*Brison* v. *Brison,* 90 Cal. [323] 335 [27 Pac. 186].) If the confidence by which the thing was gained had not been betrayed, the person to whom the promise ran, the one who was to receive it ultimately, would be the 'person who would

otherwise have had it.' It necessarily follows that the mere fact that the broken promise, constituting one of the elements whereby an involuntary trust is created, is a promise to convey land, either to the original owner or to a third person, is not a valid objection to the recognition and enforcement of such involuntary trust at the suit of the person who was intended by the donor to be the beneficiary. No conditions other than those stated in section 2224 are necessary. If those conditions exist, the involuntary trust arises, although the transaction was entirely oral and consequently·void as an express trust under sections 852, 1091, and 1624 (Civil Code), and although the means of gaining the thing was the making of an oral or written promise to convey to some other person, or reconvey to the donor.'' (*Lauricella* v. *Lauricella,* 161 Cal. 61 [118 Pac. 430]. See, also, *Hayne* v. *Hermann,* 97 Cal. 259 [32 Pac. 171]; *Taylor* v. *Morris,* 163 Cal. 717 [127 Pac. 66]; *Cooney* v. *Glynn,* 157 Cal. 583 [108 Pac. 506]; *Smith* v. *Lombard,* 201 Cal. 518 [258 Pac. 55]; *Allen* v. *Meyers,* 5 Cal. (2d) 311 [54 Pac. (2d) 450]; *Hillyer* v. *Hynes,* 33 Cal. App. 506 [165 Pac. 718]; *Taylor* v. *Bunnell,* 77 Cal. App. 525 [247 Pac. 240].)

While defendant contradicted much of the evidence which we have summarized, the conflict thereby created was resolved against her. There is ample evidence supporting the findings, and under the rules announced in the cases we have cited, that evidence supports the conclusion that defendant held the property under the terms of a constructive trust with plaintiff as the beneficiary and should execute that trust by conveying the property to him.

There is no merit in the argument that plaintiff's cause of action is barred by the statute of limitations. The action was started in about one month from the time defendant repudiated her trust and for the first time claimed the property as her own, and well within five years from the time she acquired title to it. Under these circumstances the action was not barred by the statute of limitations. (*Bradley Bros.* v. *Bradley,* 20 Cal. App. 1 [127 Pac. 1044]; *Hillyer* v. *Hynes, supra; Cohn* v. *Goodday,* 191 Cal. 615 [217 Pac. 756].)

The judgment is affirmed. The attempted appeal from the order denying the motion for new trial is dismissed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 5, 1940, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 8, 1940.