[Civ. No. 12270. First Dist., Div. One. Aug. 5, 1943.]

EARLE C. STEINBERGER, Respondent, v. ALBERT I. STEINBERGER, as Administrator, etc., Appellant.

A. B. Bianchi for Appellant.

John B. Ehlen for Respondent.

PETERS, P. J.—Plaintiff, Earle C. Steinberger, brought this action against the administrator of the estate of William Edward Steinberger, who died intestate and who was the uncle of plaintiff, to establish a trust in an undivided one-third interest in real property in San Francisco. From a judgment for plaintiff the defendant administrator appeals.

The facts are as follows: In 1929, or prior thereto, Mary Louise Steinberger, grandmother of Earle and a relative of William Steinberger, deeded the property, then encumbered, to William, Earle and to Earle's brother. William was the uncle of Earle. Each of the grantees received an undivided one-third interest in the property. On September 12, 1930, Earle, at the request of William, executed a grant bargain and sale deed of his one-third interest to his uncle William. This deed was executed on the uncle's oral promise to reconvey upon the request of Earle. This promise was subsequently orally renewed and orally acknowledged. William died on February 8, 1940. Prior to that time there had been no request to reconvey. The administrator refused to recognize Earle's interest in the property. The present action was brought some time prior to June 10, 1941, the amended complaint having been filed on that date.

The court found that a confidential relationship existed between Earle and his uncle; that on the date of the deed

Earle was about to leave San Francisco for Los Angeles for an indefinite period; that the uncle requested Earle to execute the deed in order to make it more convenient for William to take care of and manage the property; that the uncle promised that if Earle would execute the deed, he, the uncle, would take care of and manage the property for the benefit of Earle and of himself, and that he would reconvey Earle's one-third interest upon request; that in compliance with such request, and because the plaintiff reposed the utmost trust and confidence in his uncle, and because he believed and relied upon the promise to reconvey, Earle executed the deed in question; that the deed was executed without consideration; that from the date of the execution of the deed until the time of his death William continuously and on repeated occasions recognized that he was holding the one-third interest in trust for Earle; that William at no time repudiated the trust; that the defendant administrator has refused to reconvey upon demand of Earle.

On this appeal the administrator, while not denying that the evidence supports the finding of the oral agreement to reconvey and its subsequent acknowledgment, contends that all such evidence was inadmissible as being in violation of the parol evidence rule, and of the statute of frauds. He also contends that if a constructive trust arose it necessarily arose in 1930 when the deed was executed and the promise made, and for that reason plaintiff's claim is barred by the statute of limitations. It is also urged that he is entitled to a lien on the premises for sums advanced by his intestate. In his reply brief, and in briefs filed at the request of the court since oral argument, he urges that the finding of confidential relationship is unsupported by the evidence. None of these contentions is sound.

The main problem involved centers around the application of the statute of frauds and the parol evidence rule to the facts here involved. Section 852 of the Civil Code provides that: "No trust in relation to real property is valid unless created or declared:

"1. By a written instrument, subscribed by the trustee, . . . or,

"3. By operation of law." Under the parol evidence rule a party is prohibited from varying the terms of a written instrument by oral testimony. In the instant case plaintiff deeded the property to William by a grant bargain and sale deed. It is obvious, therefore, that the express trust, resting

in parol, is unenforceable as an express trust, and that the oral evidence of such trust does tend to vary the terms of the deed. But this is not an action to enforce the oral express trust. It is an action to enforce a constructive trust which it is claimed arose by operation of law upon the repudiation of the promise to reconvey.

The law generally is unsettled on the question as to whether or not equity will enforce a constructive trust in real property upon breach of an oral contract to reconvey. The English cases hold that the transferee may set up the statute of frauds against enforcement of the oral express trust, and that no penalty will attach to him for so doing, but, if he sets up the statute, he is duty bound to restore the property received on the faith of his oral promise. If the transferee will not voluntarily make restitution, equity will compel such restitution through the medium of a constructive trust. The theory is that the constructive trust will be imposed to prevent the unjust enrichment of the transferee. Some few American cases have reached the same result by holding that the transferee's repudiation of his oral promise to reconvey is a fraud upon the transferor, which gives rise to the constructive trust.

The so-called majority American rule is that the repudiation of an oral promise to reconvey does not give rise to a constructive trust. The theory is that equity must respect and enforce the statute of frauds, and that to enforce a constructive trust is a violation of the spirit, if not the letter, of the statute. (For discussion of the two rules, with many cases cited, see 3 Bogert, Trusts and Trustees, p. 1585, § 495, et seq.; 1 Scott on Trusts, p. 246, § 44, et seq.; 1 Perry on Trusts and Trustees (7th ed.), p. 295, § 181a, et seq.)

California has apparently aligned itself with the English and the so-called minority American view. In *Taylor* v. *Morris*, 163 Cal. 717 [127 P. 66], there was involved a similar problem to the one here presented. Without reference to the confidential relationship there existing, the court stated (p. 722) : "The statute of frauds is never permitted to become a shield for fraud, and fraud at once arises upon the repudiation by the trustee of any trust, even if that trust rests in parol. When it rests in parol, either parol evidence must be received to establish the trust, or the faithless trustee will always prevail. Certainly no elaboration of so plain a proposition is necessary, and it should be sufficient to refer to such

cases as *Butler* v. *Hyland*, 89 Cal. 575 [26 P. 1108]; *Hayne* v. *Hermann*, 97 Cal. 261 [32 P. 171]; *Odell* v. *Moss*, 130 Cal. 352 [62 P. 555]; *Becker* v. *Schwerdle*, 141 Cal. 391 [74 P. 1029]; *Fanning* v. *Green*, 156 Cal. 279 [104 P. 308]; *Cooney* v. *Glynn*, 157 Cal. 589 [108 P. 506]; *Lauricella* v. *Lauricella*, 161 Cal. 61 [118 P. 430]." In *Gray* v. *Walker*, 157 Cal. 381 [108 P. 278], however, a department of the Supreme Court expressly adopted the so-called majority view, citing such cases as *Feeney* v. *Howard*, 79 Cal. 525, 526 [21 P. 984, 12 Am.St.Rep. 162, 4 L.R.A. 826]; *Babcock* v. *Chase*, 111 Cal. 351 [43 P. 1105]; *Sheehan* v. *Sullivan*, 126 Cal. 189 [58 P. 543]. See, also, *Smith* v. *Mason*, 122 Cal. 426 [55 P. 143], adopting the so-called majority American view. The more recent California cases have clearly followed the rule of *Taylor* v. *Morris, supra,* and have held that a constructive trust arises and will be enforced to compel restitution upon violation of the oral promise. (*O'Brien* v. *O'Brien,* 50 Cal. App.2d 658 [123 P.2d 877]; *Robertson* v. *Summeril,* 39 Cal. App.2d 62 [102 P.2d 347]; *People* v. *Ahern,* 31 Cal.App.2d 655 [88 P.2d 787]; *McRae* v. *McRae,* 67 Cal.App. 480 [227 P. 933]; *Airola* v. *Gorham,* 56 Cal.App.2d 42 [133 P.2d 78].)

This problem has been the source of much discussion by the various legal authorities in the field of trusts. It is the view of these authorities that the English view is sound and that the so-called American view is unsound. It is their view that one of the functions of a court of equity is to prevent unjust enrichment. Just as quasi contracts are used to prevent unjust enrichment in the field of contracts, so quasi or constructive trusts should be used to prevent unjust enrichment in the field of trusts. Neither the parol evidence rule nor the statute of frauds will prevent a grantor from showing that a deed absolute on its face was intended as a mortgage, and upon payment of the obligation the grantor can compel restitution. In that case, just as is so in the problem here involved, the express oral promise to reconvey is unenforceable, but the repudiation of that promise should compel the grantee to restore the grantor to the status quo. (3 Bogert, Trusts and Trustees, p. 1603, § 497; 1 Scott on Trusts, p. 246 § 44; James Barr Ames in 20 Harv.L.Rev. 549; George P. Costigan, Jr. in 12 Mich.L.Rev. 427 and 515; Chief Justice Harlan F. Stone in 6 Columb.L.Rev. 326; see notes 24 Cal. L.Rev. 609; 13 Cal.L.Rev. 174.) These arguments seem unanswerable. It should be here noted that in notes attached

to section 182 of the Restatement of the Law of Restitution, and section 44 of the Restatement of the Law of Trusts, it is noted that: "The Institute takes no position" on the question here. under discussion. If California has adopted the so-called English view, which would seem to be indicated by the above authorities, it is apparent that upon repudiation by the administrator a constructive trust arose, and that the administrator was properly required to restore the property in question.

Although the so-called majority American view is that no trust will arise upon a repudiation of the oral promise to reconvey, several important exceptions to that rule have been recognized. These exceptions are perhaps best stated in section 182 of the Restatement of the Law of Restitution and section 44 of the Restatement of the Law of Trusts, the two sections being substantially identical. Section 182 provides: "Where the owner of an interest in lands transfers it *inter vivos* to another upon an oral trust in favor of the transferor or upon an oral agreement to reconvey the land to the transferor, and the trust or agreement is unenforceable because of the Statute of Frauds, and the transferee refuses to perform the trust or agreement, he holds the interest upon a constructive trust for the transferor, if

"(a) the transfer was procured by fraud, misrepresentation, duress, undue influence or mistake of such a character that the transferor is entitled to restitution, or

"(b) the transferee at the time of the transfer was in a confidential relation to the transferor, or

"(c) the transfer was made as security for an indebtedness of the transferor."

These exceptions, and particularly the one relating to confidential relations, are recognized in nearly every American state (see cases collected 3 Bogert on Trusts and Trustees, p. 1594, § 496; 1 Scott on Trusts, p. 253, § 44.2), and have clearly been adopted in California. (See California Annotations to the Restatement of the Law of Trusts (§ 44) and to the Restatement of the Law of Restitution (§ 182). It is well settled in this state that breach of the oral promise to reconvey by the transferee or his administrator when the transferee was in a confidential relationship with the transferor at the time of the transfer constitutes sufficient "fraud" to create the constructive trust. In *Estate of Cover*, 188 Cal. 133, 143 [204 P. 583], the court defined the terms "confidential relation" as follows: "Confidential and fiduciary rela-

tions are, in law, synonymous, and may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another." However, it is not clear from the cases whether the courts mean a confidential relationship in fact must exist, or whether it must also be a relationship based on status. (See cases commented on, 13 Cal. L.Rev. 174.) The basis of the confidential relationship exception is that under section 2224 of the Civil Code the equity courts will prevent one person who is in a confidential relation with another from becoming unjustly enriched by reason of a breach of the trust. It would seem, therefore, that a confidential relation in fact should be the test. Under such a test relief would be afforded in practically every case where there is a breach of the oral promise to reconvey. Few cases will arise where one person will convey property to another by absolute deed, and where the grantor will be satisfied with the oral promise of the grantee to reconvey, unless the grantor, in fact, has trust and confidence in the integrity and fidelity of the grantee. The result is that under such a test the exception tends to swallow up the rule to which it is supposed to be an exception. That is exactly what has happened in this state. The cases are clear that where there is some sort of a status between the grantor and the grantee, and confidence is imposed, a constructive trust will be imposed upon repudiation of the oral promise to reconvey. Thus actual trust and confidence, plus the relationship of parent and child, is sufficient (*Robertson* v. *Summeril*, 39 Cal.App.2d 62 [102 P.2d 347]; *Cooney* v. *Glynn*, 157 Cal. 583 [108 P. 506]; *Nordholt* v. *Nordholt*, 87 Cal. 552 [26 P. 599, 22 Am. St.Rep. 268]; *Mead* v. *Mead*, 41 Cal.App. 280 [182 P. 761]), as is that of husband and wife (*Allen* v. *Meyers*, 5 Cal.2d 311 [54 P.2d 450]; *Kohn* v. *Kempner*, 59 Cal.App. 621 [211 P. 805]; *Smith* v. *Lombard*, 201 Cal. 518 [258 P. 55]; *Taylor* v. *Bunnell*, 77 Cal.App. 525 [247 P. 240]; *Lauricella* v. *Lauricella*, 161 Cal. 61 [118 P. 430]; *Jones* v. *Jones*, 140 Cal. 587 [74 P. 143]; *Brison* v. *Brison*, 75 Cal. 525 [17 P. 689, 7 Am. St.Rep. 189]), even where the relationship is meretricious (*Cole* v. *Manning*, 79 Cal.App. 55 [248 P. 1065]). The trust has also been imposed where actual trust and confidence existed and the grantor and grantee were brother and brother (*O'Brien* v. *O'Brien*, 50 Cal.App.2d 658 [123 P.2d 877]; *Logan* v. *Ryan*, 68 Cal.App. 448 [229 P. 993]; *Cummings* v. *Cummings*, 55 Cal.App. 433 [203 P. 452]), or were brother

and sister (*Tench* v. *McMeekan,* 17 Cal.App. 14 [118 P. 476]),
or were attorney and client (*Broder* v. *Conklin,* 77 Cal. 330
[19 P. 513], 121 Cal. 282 [53 P. 699]), or principal and
agent (*Kimball* v. *Tripp,* 136 Cal. 631 [69 P. 428]) or client
and business advisor (*Sanguinetti* v. *Rossen,* 12 Cal.App. 623
[107 P. 560]). Coming closer to the relationship here in-
volved, it has been held that actual trust and confidence, plus
the relationship of aunt and niece, will be sufficient. to raise
the constructive trust (*Butler* v. *Hyland,* 89 Cal. 575 [26 P.
1108]) as is the relationship of uncle and niece and adopted
daughter (*Alaniz* v. *Casenave,* 91 Cal. 41 [27 P. 521]) and
where the grantor and grantee were aunt and nephew by
marriage (*People* v. *Ahern,* 31 Cal.App.2d 655 [88 P.2d 787]).
Trusts have also been imposed where the grantor and grantee
were an engaged couple (*McRae* v. *McRae,* 67 Cal.App. 480
[227 P. 933]), and where the grantor and grantee had "rela-
tions of great confidence" and were later married (*Bradley
Co.* v. *Bradley,* 165 Cal. 237 [131 P. 750]; Id., 37 Cal.App.
263 [173 P. 1011]) and where they were brothers-in-law (*An-
derson* v. *Broadwell,* 119 Cal.App. 130 [6 P.2d 260].) In *Barr*
v. *O'Donnell,* 76 Cal. 469 [18 P. 429, 9 Am.St.Rep. 242], it
was held that where one cotenant deeds to another cotenant
and the latter breaches his oral promise to reconvey, no trust
arises, but in that case it was not contended that the rela-
tionship between cotenants was confidential. In *Stewart* v.
*Shearman,* 22 Cal.App.2d 198 [70 P.2d 702], however, it was
held that cotenants stand in a confidential relationship to one
another.

　　██　　In the instant case the trial court found that Earle
and his uncle William stood in a confidential relationship to
each other. This finding is amply supported. There is not
only the evidence of the status of uncle and nephew, and of
cotenants, but there is ample evidence to show that a confi-
dential relationship in fact existed. The respondent testified
that he had trust and confidence in his uncle. The evidence
shows that Earle and William lived in the house on the prop-
erty here involved from the time of Earle's birth; that the
uncle gave Earle money when he needed it, and that Earle
reciprocated; that the uncle frequently expressed solicitude
for his nephew Earle; that the uncle frequently stated he
was keeping and holding the home for the boys. The evidence
shows a friendly intimate relationship existed between Earle
and his uncle. From this evidence it is apparent that the

finding of confidential relationship is amply supported. It follows that whether California follows the English rule or the limited American rule, in the instant case a constructive trust arose upon the death of William and upon the repudiation of the trust by his administrator.

But little need be said about the defense of the statute of limitations. The cases are clear that the constructive trust does not arise until the transferee repudiates the oral promise to reconvey or dies. (*Norton* v. *Bassett*, 154 Cal. 411 [97 P. 894, 129 Am.St.Rep. 162]; *Barritt* v. *Barritt*, 132 Cal.App. 538 [23 P.2d 54]; *Easton* v. *Geller*, 116 Cal.App. 577 [3 P.2d 74]; *Jones* v. *Jones*, 140 Cal. 587 [74 P. 143]; *Allen* v. *Meyers*, 5 Cal.2d 311 [54 P.2d 450].)

The last contention of appellant is that he is entitled to a lien for sums advanced by his intestate. The evidence shows that when the deed was executed to William there was a mortgage on the property for $3,000; that in 1929 the mortgage was renewed by the three donees; that in 1934 the mortgage was renewed by William for $2,000; that in 1939 the mortgage was renewed by William for $1,741.90. It is the theory of appellant that William reduced the mortgage by approximately $1,300, and paid the taxes on the property during the period he was in possession, and that, equitably, he is entitled to a lien on the property for Earle's proportion of these expenses. There can be no doubt that where a constructive trust is imposed the court should require the beneficiary of the trust to do equity. This rule would normally require Earle to repay the benefits he had received from the conveyance. The evidence shows, however, that William requested the conveyance, and that he promised if Earle would so convey that he, William, intended to and would pay the expenses connected with the property, including payments on the mortgage. The evidence also shows that after the conveyance was made William occupied the premises as his home, and paid Earle nothing for this privilege. It was also shown that there was a second mortgage on the premises in the sum of $750, and that Earle paid $350 of this indebtedness, although he owned but a one-third interest in the property. At the close of respondent's case his counsel informed the court that Earle was willing to do equity by paying the portion of the expenses lawfully chargeable to him. The appellant offered no evidence on this issue at all. He made no attempt to show the amount of the taxes, or the value to his intestate of the use of the premises. No evidence was offered to rebut

the reasonable inference that all expenditures by the intestate, so far as respondent's one-third interest was concerned, were intended as a gift. The trial court made no findings on this issue. But, had such a finding been made, inasmuch as the evidence is uncontradicted, the trial court would have had to find a gift was intended, that being the only reasonable inference from the evidence. Under such circumstances, it was not prejudicial error to fail to find on the issue.

The judgment is affirmed.

Knight, J., and Ward, J., concurred.

A petition for a rehearing was denied September 4, 1943, and appellant's petition for a hearing by the Supreme Court was denied September 30, 1943.