[Civ. No. 5509.  First Appellate District, Division One.—September 28, 1927.]

BELLE B. McMILLEN, Respondent, v. THOMAS C. OLMSTED, Appellant.

Bowker & Sheridan and Robert M. Clarke for Appellant.

W. C. Shelton and Wayne L. Clarke for Respondent.

CAMPBELL, J., *pro tem.*—Plaintiff brought this action against defendant for the purpose of obtaining judgment that the defendant, her brother, holds in trust for her an undivided one-fourth interest in the southeast quarter of the southeast quarter of section 13, township 3 north, range 21 west, San Bernardino base and meridian, containing forty

acres of land, and for an accounting of all sums received by him therefrom and for general equitable relief. The judgment went for plaintiff as prayed for, the court decreeing that defendant was the record owner of an undivided one-half interest in the land, but that he held such record title in trust for the plaintiff as to an undivided one-half thereof, and that an undivided one-half of a certain oil and gas lease thereon to the Union Oil Company of California, as lessee, was held by the defendant in trust for the plaintiff as to an undivided one-half thereof. Judgment also went against defendant on an accounting in the sum of $15,754.14 and $40.50 costs. From the judgment as rendered and from the order of the court denying a new trial the defendant has appealed.

Appellant urges that .in the consideration of this case the court must commence with the presumption that the title to the real property in question vested as to a one-half interest thereof in appellant herein, Thomas C. Olmsted. For the affirmance of this judgment the testimony must be of that clear, convincing, unequivocal kind and character not only to overcome this presumption, but to establish a trust as to a one-fourth interest therein, and appellant contends that the record fails to disclose any testimony to overcome this presumption of law, much less to establish the trust by the measure and amount of evidence required under the laws of the state of California.

The record title to the forty-acre tract in question is as follows: On October 2, 1913, the forty acres, together with an adjoining eighty acres, was located as a placer mining claim by Joshua T. Stockton, Myrle T. Rogers, Mollie L. Rogers, his wife, Emmett C. Crane, Thomas C. Olmsted (appellant herein), and J. F. Brunton (whose estate is respondent herein). On October 18, 1913, Stockton, Rogers and wife leased their interest, which was an undivided one-half interest in the forty-acre tract, to Crane and Olmsted, giving therein an option to purchase their interest for $2,000. The eighty-acre tract filed on by said locators was leased to Graham and Maustard, who organized the South Mountain Oil Company, and upon which tract oil was discovered in 1915, and the title to this tract was subsequently vested in Oak Ridge Oil Company. On May 5, 1916, a patent was issued to the 120-acre tract, which in-

cluded the forty-acre parcel in dispute, to Joshua T. Stockton, Myrle J. Rogers, Mollie L. Rogers, his wife, Emmett C. Crane, Thomas C. Olmsted (appellant), and J. F. Brunton (whose estate is respondent). The option to purchase by Crane and Olmsted from Stockton, Rogers and wife of October 18, 1913, had, by its terms, expired at the time of the issuance of the patent, but had been orally extended. On June 26, 1916, Crane and wife, Olmsted and wife, and Brunton and wife conveyed their interest in the forty-acre tract to Stockton and Rogers. On August 23, 1915, Rogers and wife and Stockton conveyed to Crane and Olmsted (appellant) the forty-acre tract. On October 11, 1916, Olmsted (appellant) and Crane leased and optioned the forty-acre tract to J. W. Brunton (whose estate is respondent) and J. W. Wallace.

The answer to the complaint does not deny the allegations of what was actually done regarding the initiation of oil rights in and to the forty acres in dispute. It is undisputed that on June 2, 1910, the Flow No. 3 Placer Mining Claim, containing 120 acres, which included the forty acres in question, was located on South Mountain by Joshua T. Stockton and his associates, and that in July, 1913, said locations were owned and controlled by Stockton and his attorney, Judge M. T. Rogers; that about the month of July, 1913, an agreement was entered into between appellant and Crane and Stockton and Rogers, which provided that said placer mining claim should be relocated as the South Mountain Placer Mining Claim by Stockton, Rogers, Mrs. Rogers, Crane, Olmsted (appellant), and Brunton (whose estate is respondent) ; that upon relocating the claim a cor-. poration should be organized and procured to develop the property under lease from all locators, which lease should provide an option to purchase the eighty acres at $50 per acre, payable to Stockton and Rogers. It is also admitted that a lease on the remaining forty acres was made to Olmsted and Crane by Stockton, Rogers, and Mrs. Rogers, carrying with it an option to purchase for $2,000 any time within three months after discovery of oil on either the forty acres or on the eighty acres, payable one-half within a period of three months and one-half within six months after discovery. The only denial is that there was any agreement with Brunton or that he should have any interest in the loca-

tions or the forty-acre lease and option from Stockton and Rogers, even though it is conceded by the answer that be became one of the six original locators. There was no formal written contract between appellant and his brother-in-law, Brunton, as to the interest of each in this lease and option. The answer does not deny that the property was relocated as the South Mountain Placer Mining Claim by Stockton, Rogers, Mrs. Rogers, Olmsted, Crane, and Brunton; that pursuant to agreement the South Mountain Oil Company was organized and received an oil development lease from Stockton, Rogers, Mrs. Rogers, Olmsted, Crane, and Brunton for the whole north one-half of the southeast quarter of section 13, which lease contained an option to purchase the land upon discovery of oil at $50 per acre; that about October 18, 1913, Stockton and Rogers executed and delivered to Crane and Olmsted the said lease and option to buy the forty acres in question, and admits that the locators, including Brunton, finally, on May 24, 1916, received, after a contest, a patent to said South Mountain Placer Mining Claim, which included the forty acres; that all of said locators, including Brunton, deceased, executed and delivered a deed to the eighty-acre tract, to wit, the north half of the southeast quarter of section 13, to South Mountain Oil Company or its successors, and that the grantee paid to Rogers and Stockton $50 per acre therefor, and it is also admitted that about June 26, 1916, at the request of Judge Rogers, Crane and his wife, the deceased Brunton and his wife and appellant Olmsted and his wife conveyed their title to the forty-acre tract to Rogers and Stockton. Judge Rogers in his testimony explains the purpose of this deed to be that the option to purchase had expired, but had been orally extended. ''The fact of the matter is, Mr. Stockton and myself was getting restive about it and we talked it over and we finally decided we would give them another extension of time, but in order for them to have that they must convey the property to us, so that if they fell completely down in taking over the option—exercising it—why there would be no difficulty in carrying out the arrangement which we had as to the conveyance to us of their interest, if they failed to operate under the lease and to exercise the option for the purchase of the forty, and before the option was in fact exercised, and before that

for some little time, why, we of course knew, or thought and believed, that the forty acres was worth a great deal more money than we was getting under this option. Just because my word was given they could have this opportunity to purchase all because I wanted to be fair.'' It is also admitted that thereafter, on or about August 23, 1916, Crane and Olmsted paid the option price of $2,000 and received a deed to the property.

The record discloses that plaintiff's decedent, John W. Brunton, was her husband and the defendant's brother-in-law. Brunton and defendant were good friends and defendant had worked for Brunton prior to the transaction involved in this case. Brunton was a practical oil man and had been in the business for more than twenty years, had drilled wells and organized oil companies. While defendant, when called as a witness under section 2055 of the Code of Civil Procedure, stated: ''I was not associated with Mr. Brunton and had no relations whatever in any way with him prior to July, 1913,'' he admitted when confronted with a letter that in January, 1912, he wrote and sent a letter to Brunton concerning a joint oil enterprise the two were working on in the Sespe district in Ventura County, and on July 6, 1913, he wrote Brunton asking for the form of a lease and discussing mutual business relationships. Defendant also admitted that on July 6, 1913, he and Brunton were thinking and talking of locating some property upon South Mountain, located near Santa Paula, Ventura County. He said: ''We were just simply locating, looking for open government land to locate.''

In the affidavit of appellant given the inspector of the Department of the Interior concerning the patent covering the land in question appellant acknowledges the interest of Brunton. In his testimony the following appears: ''Q. I will ask you again, Mr. Olmstead, if in your affidavit which you gave to the inspector of the department of the interior, if you didn't claim to them you were the owner of a half interest in the forty acres, and one-half of your interest you transferred to your brother-in-law, J. W. Brunton? A. Yes, sir, I think I did. Q. You did so state? A. Yes, sir.'' And the certified copy of the record of the United States Land Office clear-listing for patent the land in issue bearing date March 23, 1916, signed by Commissioner Tall-

man, giving the story of the locating and development of this placer mining claim, contains the following: ''He (Crane) states that his interest in the claim is a one-half interest in the forty-acre lease. . . . Brunton states . . . that his interest in the claim is a one-fourth interest in the forty-acre lease which he still retains. . . . Olmsted states that his interest is a one-half interest in the forty-acre lease, a one-half interest in which he transferred to his brother-in-law, J. W. Brunton.''

Up to March 23, 1916, six months prior to the option to purchase being exercised by Crane and appellant, appellant admits that Brunton owned a half of his half interest in the forty acres. In fact, he so testified: ''Q. He had a quarter on that at the time you made your affidavit to the land department? A. Yes, sir. Q. That was prior to the time he had his lease, wasn't it? A. That is a different condition. Q. You just explain to the court what those conditions were that made it different. A. He was a locator, we had decided on putting Mr. Brunton in and giving him half of my half of the 40 acres, providing he would pay his part in the purchase of that property.'' It may here be noted that appellant's testimony quoted is in direct conflict with his verified answer wherein he denies that the lease and option from Stockton and Rogers were executed or delivered with respect to any agreement with Brunton or any understanding that Brunton was to acquire any interest in said lease on said property.

The situation with respect to the forty-acre tract then is that on March 23, 1916, Brunton was an owner in common or partner in the forty-acre lease with appellant as to the one-half interest held by appellant; that according to appellant, Brunton failed to pay his part of the $1,000 due from appellant and Brunton to take up the option, and appellant paid it himself; that he had no letters or any document in writing to Mr. Brunton requesting him to advance his half, but he told him several times. He further testified: ''The conversation with Mr. Brunton in reference to the thousand dollars I think was at the Hellman building at Los Angeles. I had not written to him about this matter as I recall. I told him that we had to make this payment of a thousand dollars or the option would be in default, which I did, and Mr. Crane and myself had another option

and later purchased the property.'' This conversation appellant testified was about the time the option would expire along in September, 1916. The conversation was about the old option; appellant never told Brunton of the claimed new option. According to the testimony of Judge Rogers no new option was given; the original option was extended from time to time until it was finally paid and title conveyed. ▮ The evidence, therefore, shows that appellant told Brunton the option was about to expire and requested that he put up half of appellant's half of the option price; that Brunton failed to do so at that time, and that thereafter appellant and Crane got an extension of the option and later, without any notice or demand upon Brunton, paid the option price and took title, claiming that Brunton was out. This of itself would make appellant a trustee for Brunton as to one-half of appellant's half interest in the forty-acre tract with of course a right to demand $500 contribution from Brunton under section 2224 of the Civil Code, providing: ''One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is unless he has some other or better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.'' It is significant that no such demand was ever made verbally or in writing. It is also significant, according to appellant's statement, that no demand verbally or in writing was ever made on Brunton to pay his part of the $1,000 prior to the exercise of the option after the extension was granted. It would be strange if Brunton, who was interested together with appellant in other development work on South Mountain and knew what was going on, could deliberately let his interest in a valuable piece of patented land slip away in the manner outlined by appellant, particularly in view of the fact, as stated by Judge Rogers, that the forty acres ''was worth a great deal more money than we were getting.''

▮ That appellant and Brunton were jointly interested in oil development on South Mountain is shown by appellant's own testimony. He testified that before the original agreement with Stockton and Rogers was entered into he had talked with Brunton regarding the location of another piece of government land containing 160 acres, called the

Sunset-Ventura, and in fact had discussed getting several locations on South Mountain; that Mr. Brunton, himself and associates located other land pursuant to that understanding, one claim of 160 acres being the Sunset-Ventura, in locating which they jumped prior locations of Stockton and his associates over Stockton's objections; that in 1916, the time he talked to the inspector, he and Brunton were associated on two locations—one being the Sunset-Ventura and the other the property here in question. About that time they had made a little trail across the forty-acre piece up to the 160 acres. Mr. Brunton sent his money down to pay for it. Appellant further testified that he more than likely superintended the Mexicans he hired to build the trail, though they were building it. From the evidence in the record, which would require too much space to further quote or summarize, the logical conclusion or inference to be drawn is that long prior to the time that appellant exercised the option on the forty acres he and his brother-in-law, Brunton, were associated as partners in oil enterprises and that they were financed by Brunton, and that therefore their relations were confidential and they were trustees for each other (Civ. Code, sec. 2410), and "a trustee may not use or deal with the trust property for his own profit, or for any other purpose unconnected with the trust in any manner" (Civ. Code, sec. 2229). "The relation between partners is confidential and with respect to the firm property and business each is a trustee for the other" (*Dennis* v. *Gordon*, 163 Cal. 427 [125 Pac. 1063]).

 But if a partnership relation did not exist between the deceased and appellant there certainly existed a community of interest, and where two persons have a community of interest, there is also a community of duty between them (*In re Du Pain's Estate*, 185 Pa. 332 [64 Am. St. Rep. 651, 40 L. R. A. 552, 39 Atl. 947]; *Venable* v. *Beauchamp*, 3 Dana (Ky.), 321 [28 Am. Dec. 84]). This principle arises from the privity subsisting between parties having a common interest in the same land and a common interest in the possession of each.  If parties are interested together by mutual agreement and a purchase is made agreeable thereto, neither party can exclude the other from what was intended for the common benefit; and any private benefit touching the common right which is secured by either party

will turn him into a trustee for the benefit of both (*Jenkins* v. *Frink*, 30 Cal. 586 [89 Am. Dec. 134]).

Appellant urges that if Brunton had been an owner of one-half of Olmsted's half interest he would not have taken the lease from Crane and Olmsted. In view of the circumstances Brunton's acceptance of the lease was not incompatible with ownership. Appellant, who with Crane executed the lease to Brunton, had an interest in the lease. According to appellant's own testimony he had an interest in the leasehold to develop the property—took a contract to drill the well for so much equity in the lease and so much in money. Then, again, Crane, Olmsted, and Brunton evidently desired to lease the forty acres on a royalty basis, which Crane and Olmsted eventually did, and Brunton being the experienced oil man was evidently thought to be the one to handle the matter and for that purpose wanted a lease to assign to the purchaser when found, as he told Olmsted at his home in Los Angeles, according to the testimony of Wedell Lodair Brunton, "to develop the land he would have to take a lease on it, but being a locator on the land could not have a lease and to develop the land he must quit deed—a quitclaim deed or some way to develop the land, a man could not develop his own. I do not know how to state that—a man could not—the owner who was a locator could not lease his own land."

Some discussion is indulged in by respective counsel in their briefs concerning certain letters written by Olmsted to Brunton, in which the context of such letters appears to have been altered or retraced. We have not given consideration to these letters as we do not deem consideration of them necessary to an affirmance of the judgment and adopt the views of the trial court with respect to them. The trial court in its opinion brought to this court as a part of appellant's brief uses this language: "I do not give much credence to any of the correspondence which was received in evidence on behalf of the Brunton estate. I am perfectly satisfied that several of those letters had been doctored up by somebody. It required no expert to determine· that question. An ordinary reading glass would easily disclose that fact. There is nothing, however, to indicate that the plaintiff took any part in any such fraud or had any knowledge of it. There is nothing in the testimony to

indicate who made these changes in those letters, but leaving entirely out of consideration those letters, I still feel that there was ample testimony upon which to base the claim made by the plaintiff in her complaint.''

■ Appellant has cited us to sections of Pomeroy's Equity Jurisprudence, sections of the Civil Code, and a number of California cases in support of his contention that neither an express nor resulting trust exists in the present case, and contends that a constructive trust does not exist under section 2224 of the Civil Code, and cites us to *Burns* v. *Ross*, 190 Cal. 274 [212 Pac. 17], for a construction of that code section. In that case the court says: ''The equitable principle contained in that section is thus stated in *Mandeville* v. *Solomon*, 33 Cal. 38, 44: 'Where the circumstances of a transaction are such that the person who takes the title to property cannot be permitted to hold and enjoy it in whole or in part without necessarily violating some principle of equity, a constructive trust will be raised for the benefit of the party entitled in equity to its beneficial enjoyment. It is because he holds the property, or some interest therein, which it is inequitable for him to enjoy that the court declares the trust and fastens it upon his conscience, and wrests the property or interest from him and causes it to be transferred to the person equitably entitled to it.' ''

■■ This language in *Burns* v. *Ross*, as we view the facts contained in the record, is applicable here. While it is true, as claimed by appellant, that the evidence in a case of this kind must be clear and convincing, yet no more clear and convincing evidence is required to raise a constructive trust than is required to convert a deed absolute in form into a mortgage, and it has been held in such cases, as in others, the determination of the trial court in favor of either party upon conflicting or contradictory evidence is not open to review in this court (*Couts* v. *Winton*, 153 Cal. 686 [96 Pac. 357]; *Hillwig* v. *Boyer*, 81 Cal. App. 763 [254 Pac. 662]).

Upon a careful examination of the entire record we are satisfied that the judgment entered was the proper one to enter.

The judgment and order are affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 23, 1927.