[Civ. No. 13785.  First Dist., Div. One.  Feb. 8, 1949.]

GEORGE F. D. EDWARDS, Respondent, v. HERBERT D. EDWARDS et al., Appellants.

Shirley, Saroyan, Shearer & Sullivan for Appellants.

R. A. Rapsey for Respondent.

BRAY, J.—After trial, without a jury, judgment was entered decreeing plaintiff to be the owner of a life estate in certain real property, and ordering defendants to return to plaintiff certain personal property. Defendants appealed.

Questions raised: (1) Did the second amended complaint state a cause of action? (2) Did defendant Herbert Edwards[1] acquire and hold the property in trust for plaintiff as life tenant? (3) Do the findings support the judgment?

### 1. SECOND AMENDED COMPLAINT SUFFICIENT

This complaint asks for declaratory relief. It alleges that plaintiff and Ina Belle Edwards were husband and wife and the natural parents of defendant, aged 30 years; that plaintiff is 75 years of age; that for many years plaintiff, Ina Belle and defendant lived together in the same household maintained by plaintiff and Ina Belle; that since October, 1939, and until the death of Ina Belle in May, 1944, the three resided on the premises in question here, the expenses of the household being paid by plaintiff and Ina Belle; that subsequent to her death and until 1945, plaintiff and defendant continued to live together, plaintiff bearing all expenses of the household; that until about the month of October, 1939, defendant paid his parents for room, board and laundry, from $50 to $55 per month; that at that time it was orally agreed between the parents and defendant that the latter would make a down payment on a new home for all of the parties, and would make the monthly payments on the purchase price, deducting the amount of such payments from the amounts regularly paid the parents for room and board, and in consideration thereof the parents would continue to

---

[1]Defendant Rosaline Edwards is joined in this action principally because she is the wife of defendant Herbert D. Edwards. Except where otherwise noted Herbert D. Edwards will be referred to as "defendant."

"harbor" defendant; that it was agreed by the three parties that the premises would be purchased in defendant's name "so that in the event of the death of both plaintiff and said INA BELLE EDWARDS said property would revert to defendant HERBERT D. EDWARDS, provided however that until the death of both of said parents the said dwelling should be and remain the family home"; that the agreement was performed by all the parties until the death of Ina Belle, and then by plaintiff and defendant until 1945; that in August, 1944, defendant married the defendant Rosaline and from then on the married couple lived with plaintiff on said premises; that plaintiff in reliance upon said agreement bore the expenses, managed the house and paid part of the upkeep and living costs for all; that about the 25th of May, 1945, defendant suddenly claimed the premises to the exclusion of plaintiff, demanding that plaintiff vacate; that on his refusal to leave, defendant and Rosaline moved out, but continued to demand possession from plaintiff; that on June 23, 1945, surreptitiously and against plaintiff's will, defendant removed from said premises most of the furniture and furnishings, a list of which is attached to the amended complaint, which personal property he refuses to return; that said personal property was the community property of plaintiff and Ina Belle, and is now plaintiff's property, and plaintiff has been damaged in the sum of $1,000 by its removal; that the value of the personal property is in excess of $1,000 and plaintiff asks permission to amend the complaint to set forth its true value when ascertained; that there is "actual controversy between the parties . . . relating to the legal rights of said parties under the aforesaid oral agreement . . . and that plaintiff desires a declaration thereof." The prayer asks for a declaration of the respective parties' rights with reference to the real and personal property and "any monies which may be owing from defendant to plaintiff under said oral agreement."

Defendants filed a general and special demurrer to this complaint, which the court overruled. Defendants contend that the complaint contains (1) an alleged cause of action for specific performance of an oral agreement relating to real property; (2) one for conversion of personal property; (3) one for declaratory relief; and that such causes of action are improperly united and not separately stated. The complaint is not a model pleading. However, as will be pointed out later, it did set up a cause of action in trust. The question of the joining and failing to plead separately the conversion

cause of action has become moot in view of defendant's offer at the trial to return all of the personal property listed except a radio and stove, which he claims he purchased with his own funds, and the fact that he makes no claim to these items. They were removed from the house on advice of counsel "to bring the matter to a head" and "Defendants are ready to send the personal property to any place selected by plaintiff."

While plaintiff asks for declaratory relief, it is apparent from the second amended complaint that this is not a true action for declaratory relief but one to establish a trust. As said in *Standard Brands of California* v. *Bryce,* 1 Cal.2d 718, 721 [37 P.2d 446], ". . . although the plaintiff in form has attempted to allege a cause for declaratory relief, nevertheless the facts alleged by it reveal that it is not entitled to any such relief, because it has not in fact alleged any such cause. . . . The subject matter of an action and the issues involved are determinable from the facts pleaded, rather than from the title or prayer for relief. [Citing cases.] When, as here, the cause of action has already accrued and the only question for determination is the ultimate liability of one party on account of consequential relief to which another is shown to be entitled, it has been held that the nature of the action is not a cause for declaratory relief but is defined by the subject matter of the accrued cause of action. [Citing cases.]"

Here the plaintiff alleges in effect that by reason of the oral agreement and the acceptance of reduced board and room payments from defendant, a constructive trust was created, by which plaintiff is entitled to remain on the premises for life.

Defendants contend that the second amended complaint does not allege such a cause of action. While the allegations of trust are rather sketchy and the complaint is ambiguous and uncertain in some respects, there are alleged the elements of a constructive trust, and as the case has been fully tried, plaintiff's right to relief should not now be denied because of defects in pleading. In *Swanson* v. *Hempstead,* 64 Cal.App.2d 681 [149 P.2d 404], the court said (p. 682): "We recognize that in the administration of justice pleadings are a means to an end, not an end in themselves, and that an issue which has been tried and determined should not be removed from the foundation of the resulting judgment just because it was not an issue within the framework of the pleadings."

This statement applies even more strongly to our case, as it was tried entirely on the trust theory. Neither in its findings and conclusions nor in its judgment does the court refer in any way to declaratory relief. ■ By the parent and son relationship and their living together up to and at the time of the making of the oral agreement, under the circumstances set forth, a confidential relationship is alleged. The agreement to use for the purchase of the property, a portion of the board money which the parents would otherwise have received, and to have title taken in defendant subject to the use of the property by both parents until their deaths, is also alleged. There is also alleged the performance of the agreement by the parents (to conform to the proofs, an amendment to the complaint was permitted setting up certain amounts paid by plaintiff for the improvement of the premises), and the breach of the agreement by defendant. This is sufficient framework upon which to find a constructive trust.

Defendants contend that a constructive trust cannot arise where, as here, the purchase price of the property was paid for by the same person who acquired the title. Moreover, they contend, there was no proof that, at the time of the making of the agreement or the purchasing of the property, defendant intended to violate the agreement; hence, this, at best, is merely a breach of contract and not of trust, and such contract, under the statute of frauds, must be in writing. They cite *Wittenbrock* v. *Cass,* 110 Cal. 1 [42 P. 300], where a mother purchased property with her own funds after orally agreeing with her son that if he would pay the taxes, insurance, repairs and supply her with board and lodging, she would allow the son and his family to live with her on the premises, the son would have title to the property after her death, and she promised not to encumber the property in the meantime. After her death, the son argued that there was a constructive trust, effective as against a subsequent mortgagee with notice of the oral agreement. In holding that no constructive trust existed, the court stated (p. 5): ''It is true that a constructive trust arises by operation of law, and is expressly excepted from the rule that a trust in realty can only be created by an instrument in writing (Civ. Code, sec. 852); and whenever one person acquires from another the title to real property by fraud, actual or constructive, practiced upon that other, a constructive trust is created which a court of equity will fasten upon the title in his hands. (*Hayne* v. *Hermann,* 97 Cal. 259 [32 P. 171].)

"This, however, is not such a case as that supposed. Mrs. Cass did not acquire the title to the property in question from her son, nor with his money. She bought the property and paid for it with her own money, and simply agreed with him that he and his family should live with her on the premises . . ."

While in our case the money which bought the property was defendant's, in a very real sense it was also the parents', for it was deducted from the board money which the parents would have received. This distinguishes our case from the Wittenbrock case.

The circumstances in which a breach of promise can be sufficient for the imposition of a constructive trust have been the subject of much discussion and controversy. Where the oral promise is made by a grantee that he will reconvey to the grantor, there is a split of authority whether the breach alone, in the absence of a confidential relationship or actual fraud, will support a constructive trust. (3 Scott on Trusts, § 485, p. 2363.) California imposes the trust in this situation. In *Steinberger* v. *Steinberger,* 60 Cal.App.2d 116 [140 P.2d 31], is a compilation of California authorities on this subject.

Similar problems are presented when the grantee orally promises the grantor to hold in trust for a third person. Early California cases indicated that a constructive trust would be imposed for the benefit of the third party. (See 2 Witkin, Summary of California Law, p. 1561.) However, in *Ampuero* v. *Luce,* 68 Cal.App.2d 811 [157 P.2d 899], it was held that a mere breach of an oral promise by a grantee was insufficient basis for a constructive trust in the absence of actual fraud *or a confidential relation between the parties.*

██ In the case at bar, the alleged agreement was that the grantee would hold the property for himself and his parents, the promise allegedly being made to them, not to the grantor. The breach of such a promise will support a constructive trust in favor of the parents, particularly as there was a continuing confidential relationship between the parties. (See discussion of "confidential" and "fiduciary" in the Steinberger case, *supra.*)

The following appears in 3 Scott on Trusts (§ 499, p. 2414): "A constructive trust may be imposed . where there is an existing fiduciary relationship and the fiduciary undertakes to purchase property for the beneficiary and in violation of his undertaking purchases the property for himself. This is so even though it was not originally a part of his duty as

fiduciary to purchase the property. Thus if one partner orally agrees with the other partners to purchase property for the firm, or if an officer of a corporation undertakes to purchase property for the corporation, and he purchases it for himself, he is chargeable as constructive trustee of the property for the firm or corporation. The courts have had no difficulty in imposing a constructive trust in the case of other fiduciary relations. So too a constructive trust will arise where there is a confidential relation arising out of a family connection . . .''

Defendants complain that they have been unable to find California cases imposing a constructive trust for breach of promise except where the promise was made *to the grantor*. There are cases in California, however, of the type referred to in Scott on Trusts, *supra*. Thus, where one partner had orally agreed to purchase property for the partnership but had thereafter purchased for himself, with his own funds, it was held to be a proper case for imposition of a constructive trust. ''The existence of the partnership between them placed them in confidential relations toward each other, with respect to the property which was the subject of the agreement.'' (*Koyer* v. *Willmon,* 150 Cal. 785, 787 [90 P. 135].) *McMillen* v. *Olmsted,* 85 Cal.App. 656 [259 P. 1104], reached the same result where the grantee and a third party had a ''community of interest'' with respect to the property involved.

That the statute of frauds does not apply where a constructive trust is imposed is well settled. (See *Steinberger* v. *Steinberger, supra,* 60 Cal.App.2d 116.)

### 2. SUFFICIENCY OF THE EVIDENCE

The rule to be followed in determining the sufficiency of the evidence in cases of this kind is set forth in *Viner* v. *Untrecht,* 26 Cal.2d 261, 267 [158 P.2d 3]: ''Whether the evidence to prove the existence of the trust is clear, satisfactory and convincing 'is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal.' [Citing cases.] Likewise, in such cases the credibility and weight of the evidence are exclusively for the trial court. [Citing cases.]''

While there was no time when the parties sat down and definitely worked out an agreement, plaintiff's testimony alone, which the court believed as against the contradictory testimony of defendant, plus the reasonable inferences which

the trial court had the right to draw from all of the circumstances of the case (*Blank* v. *Coffin*, 20 Cal.2d 457 [126 P.2d 868]), substantially supports the following facts: Prior to 1939 defendant and his two brothers lived with their parents in San Francisco. All of the sons gave their mother money for board and room. There was no specific amount set, but the amount averaged about $50 per month. Contributions from the two elder brothers ceased when they married and moved away. Defendant continued to live at home. The mother felt that instead of paying rent, the family should own its home. The matter was discussed between her and plaintiff. The record is not clear as to whether at this time it was discussed with defendant. After her return from a trip to Michigan the matter was discussed and it was understood by all three that she was to go down the Peninsula and find a suitable place. At this time plaintiff was suffering from hemorrhages. She picked out the San Bruno property and then it was understood by all three that the title was to be taken in defendant's name so that on the death of the parents it would be his without trouble. ". . . everything was going to be put in his name even to the utilities." Defendant was to make the payments, assisted by his parents if necessary. To enable defendant to make the payments defendant was to pay only $40 per month board and room money. The place was to be maintained as a "family" home. The place was purchased and title taken in defendant's name. The utilities were likewise in his name. He made all the payments on the property. All three moved into the home. Defendant borrowed money from a bank to make the down payment on the lots and after that loan was paid and defendant received an increase in salary, he increased his board money to $50 and then to $55 per month, from which amount he deducted the payments of $27.85 monthly which he was making on the home. While the evidence is not clear that these deductions were made every month, there is a reasonable inference that generally they were so made. The cost of running the house was paid by the parents and after the wife's death, by plaintiff, even after defendant married in 1944, and he and his wife lived on the premises, until the controversy arose in May, 1945, when defendant demanded sole possession from plaintiff. Not receiving it, he and his wife moved out, and about a month later removed most of the furniture. Plaintiff then changed the lock on the door and has continued to remain on the premises, taking in a couple who pay for all

utilities and food. Defendant has continued to make the monthly payments on the house, as well as all insurance, assessments and taxes.

The evidence shows that no formal statement of the agreement was ever made by the parties. Father and mother first talked the situation over, the mother selected the property to be bought, and then the arrangement with the son was made, in an informal, unbusinesslike manner, as family matters usually are arranged. The evidence justifies the inference drawn by the court that defendant was to hold the property for the family use and that his contributions for room and board were to be reduced for that reason. The payments on the property were, in effect, the parents' money, as otherwise they would have been paid to them for board.

### 3. FINDINGS AND JUDGMENT

■ Defendants contend that the findings do not support the judgment because they are based upon a complaint which does not set forth a cause of action. Inasmuch as we hold that the complaint does state a cause of action, this contention falls.

■ However, his second contention in this behalf is more serious. The complaint did not allege that under the agreement plaintiff was to have an exclusive life estate in the property. It alleged that "until the death of both of said parents the said dwelling should be and remain the family home." In the findings the court found all of the allegations of the complaint to be true. It also specifically found that the agreement was "that until the death of both of said parents the said dwelling should be and remain the family home." In addition, however, it found that defendants are the owners in fee of the premises "subject, however, to a life interest therein vested in plaintiff." Its conclusions and judgment were to the same effect. The findings are inconsistent. Defendants' ownership cannot be subject to the property remaining the family home and at the same time subject to an exclusive life tenancy in plaintiff. Moreover, there is no foundation in the evidence for a finding of exclusive life tenancy. The evidence limits the understanding of the parties to an agreement to use the premises as a "family home" during the lifetime of both the parents. It is evident that the parties were using laymen's language for what is in law a joint life tenancy. That the court had this idea in mind is shown by the express finding that the parties agreed

that the premises were to be used as a family home during the lifetime of the parties, and by the fact that below his signature on the judgment the judge added: "POINTS AND AUTHORITIES: A *joint tenancy* may be an estate in fee, *for life;*" etc. (Emphasis added.) This, of course, is no part of the judgment. The findings and judgment will have to be amended to conform to the proof.

The consideration for defendant's promise was the reduction in the board money. While now defendant no longer receives this, that fact does not change the legal situation as to the joint life estate of the parties. It is apparent that the son's marriage is the cause of the friction between the parties.

As is true of most family arrangements, the parties at the time of the agreement did not think through as to what possible contingencies might arise. It is a reasonable inference that they contemplated that the reduction in board might not continue as long as the parents lived. Sons, when they marry, quite frequently do not bring the bride to the family home, even though the son may own such home entirely. Moreover, there was no fixed amount of board to be paid at any given time, the only arrangement being that whatever amount the parties might agree upon from time to time, would be reduced by the amount of the payment on the house. So it may be assumed that the board reduction was to continue only so long as it was mutually agreeable for the parents, or parent, to supply, and the son to receive, such board. In view of the family relationship and the circumstances of the case, it cannot now be said that the reduction in payment of board from the making of the agreement to the date when the son removed from the premises is not adequate consideration for the son's promise to hold the property as a joint life tenancy.

The plaintiff and defendant have a joint life estate. Defendant moved out voluntarily. He has the right to return. If it is impossible for the parties to live in harmony on the premises, plaintiff will have to account to defendant for defendant's share of the rentals received by plaintiff. (*McWhorter* v. *McWhorter,* 99 Cal.App. 293 [278 P. 454]; *Swartzbaugh* v. *Sampson,* 11 Cal.App.2d 451 [54 P.2d 73].) The defendant, of course, will have to continue the payment of the monthly installments on the property, insurance, taxes, and assessments.

The case is remanded to the trial court for such accounting, and that court is instructed to amend the findings of fact and conclusions of law to find that the agreement entered into

between the parties was that the title to the property should be taken in the name of the defendant, subject to a joint life estate in the parents and defendant. Likewise, the trial court will modify the judgment to provide that defendants Herbert D. Edwards and Rosaline Edwards are the owners in fee of the premises therein described, subject, however, to the joint life estate therein of plaintiff George F. D. Edwards, and defendant Herbert D. Edwards. Each party shall bear his own costs.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied March 10, 1949, and the following opinion was then rendered:

THE COURT.—In appellants' petition for a rehearing they contend that our opinion is ambiguous as to whether the accounting to be made in the court below is to include the rentals received by respondent for the past four years or to start as of a future date. It seems clear to us that our opinion shows that appellants are entitled to an accounting of one-half of all rents which have been received or may hereafter be received, by respondent.